## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STACI GOINS,<br><br>               Plaintiff,<br><br>        v.<br><br>BB&T SECURITIES, LLC, TRUIST<br>FINANCIAL CORPORATION and ERIC<br>WATSON, in his individual and professional<br>capacities,<br><br>             Defendants. | Civil Action No.: 1:20-cv-09891<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Staci Goins ("Plaintiff"), by and through her attorneys, Faruqi & Faruqi, LLP, hereby alleges as follows against Defendants BB&T Securities, LLC ("BB&T"), Truist Financial Corporation ("Truist") (together, the "Bank"), and Eric Watson ("Watson") (collectively, "Defendants"):

### NATURE OF THE CLAIMS

1.      Over the course of her career, Plaintiff generated tens of millions of dollars for BB&T as one of its most profitable traders.

2.      Despite this, in 2018, BB&T began denying Plaintiff the bonuses she earned, deviating from an established formula based on the profits and commissions she generated, which had been used to calculate her bonuses for years.

3.      BB&T not only failed to pay Plaintiff in accordance with the formula, but also paid her at a rate lower than that applied to her male peers, who generated far less than Plaintiff in profits and commissions.

4.      Indeed, while Plaintiff's production dwarfed that of the two other traders in the New York City office, both men, Plaintiff's bonuses were paid at a fraction of the rate applied to her male comparators.

5.      When Plaintiff complained about Defendants' deviation from the agreed-upon bonus formula, Defendants demoted her in retaliation for doing so.

6.      To redress these wrongs, Plaintiff brings this action against Defendants pursuant to the Fair Labor Standards Act, as amended by the Equal Pay Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the New York Labor Law, N.Y. Lab. Law §§ 1, *et seq.* ("NYLL"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL"), as well as all applicable regulations thereunder.

## JURISDICTION AND VENUE

7.      Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

8.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's related claims arising under State and City law.

9.      Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

**A.**     **Plaintiff Staci Goins**

10.     Plaintiff is a resident of the City of New York and has been employed by Defendants since in or around January 2008.

11.     At all relevant times, Plaintiff worked out of Defendants' New York City office, located as 1133 Avenue of the Americas, New York, New York 10036.

12.     At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**B.**     **Defendant BB&T Securities, LLC**

13.     BB&T is a foreign limited liability company incorporated in Delaware, with its principal place of business located at 214 North Tryon Street, Charlotte, North Carolina 28202.

14.     At all relevant times, BB&T was an "employer" within the meaning of all relevant statutes and regulations.

**C.**     **Defendant Truist Financial Corporation**

15.     Truist is a foreign corporation and publicly traded company incorporated in North Carolina, with its principal place of business located at 214 North Tryon Street, Charlotte, North Carolina 28202.

16.     In or around December 2019, BB&T Corporation merged with SunTrust Banks, Inc. to form Truist.

17.     At all relevant times up until the merger, BB&T Corporation was an "employer" within the meaning of all relevant statutes and regulations.

18.     In addition to being liable for its own acts post-dating the merger, Truist is liable as a successor-in-interest to BB&T Corporation.

**D.**     **Defendant Eric Watson**

19.     Watson is a resident of Richmond, Virginia, has been employed by Defendants since in or around June 2010, and currently holds the title of Managing Director.

20.     At all relevant times, Watson established, implemented, disseminated, and controlled Defendants' discriminatory practices with respect to payment of Plaintiff's bonuses.

21.     At all relevant times, Watson controlled and directed the terms and conditions of Plaintiff's employment.

22.     At all relevant times, Watson maintained and exercised the power to hire, fire, discipline, and promote Plaintiff.

23.     At all relevant times, Watson was an "employer" within the meaning of all relevant statutes and regulations.

## FACTS

**A.**     **Background**

24.     BB&T hired Plaintiff in or around January 2008 as part of the BB&T Leadership Development Program.

25.     Plaintiff graduated from the BB&T Leadership Development Program in or around June 2008, after which BB&T hired her as a Product Representative in its Richmond, Virginia office.

26.     In or around 2009, BB&T promoted Plaintiff to Product Specialist.

27.     In or around January 2014, Plaintiff began working out of BB&T's New York City office.

28.     By September 2015, Plaintiff had been promoted to Vice President ("VP") of the BB&T's Retail Trading & Underwriting division and was acting as Product Manager for BB&T's Equity Derivatives and Structured Products group.

29.     Within this role, Plaintiff was responsible for trading securities – specifically, structured notes and Market-Linked Certificates of Deposit ("CDs").

30.     Plaintiff excelled in every sense of the word, generating massive returns and quickly establishing herself as one of the BB&T's most profitable traders.

31.     Moreover, when Plaintiff took over trading of structured notes and Market-Linked CDs, they were two of BB&T's worst performing product areas in terms of revenue generation, making her rapid production all the more impressive.

32.     In 2018, Plaintiff was promoted to Senior Vice President ("SVP").

33.     Until late 2018, BB&T rewarded Plaintiff's strong performance with bonuses that recognized her profitability.

**B.    The Bonus Formula**

34.     In early 2015, BB&T established a formula to calculate the bonuses paid to Plaintiff and her peers in addition to their salaries (the "Formula").

35.     Pursuant to the Formula, BB&T agreed to pay traders – including Plaintiff and her two male peers in the New York City office – mid-year and year-end bonuses equal to 20% of their quarterly profits plus 12% of their quarterly commissions, less their base salaries.

36.     While her salary was well below market, Plaintiff was willing to forgo opportunities for higher base pay based on the promise the formula represented.

37.     In other words, with a clear structure in place that rewarded her production, Plaintiff was happy to bet on herself.

38.     As her numbers have since borne out, Plaintiff's confidence in her ability to generate income for Defendants (and, pursuant to the Formula, herself) was well founded.

39.     From 2015 through late 2018, BB&T honored its Formula.

40.     It was agreed that the Formula was the metric by which Plaintiff's, Comparator A's, and Comparator B's respective levels of performance were to be assessed.

41.     In fact, Plaintiff's former supervisor, then a Managing Director (the "Managing Director"),[1] sent her regular emails providing her monthly bonus accruals and laying out the method by which BB&T calculated the same (*i.e.*, 20% of profits plus 12% of commissions, less Plaintiff's monthly salary).

42.     On at least one occasion, in March 2017, Plaintiff complained to the Managing Director that her bonus had been miscalculated.

43.     In response, the Managing Director acknowledged that he made "a human error" in his calculation.

44.     Ultimately, in October 2017, BB&T confirmed its error and paid Plaintiff an additional $50,000 pursuant to the Formula.

C.    **Defendants' Unequal Pay Practices and Plaintiff's Protected Complaints Regarding the Same**

45.     In November 2018, Eric Watson ("Watson") was promoted to the role of Managing Director and head of Retail Trading and Underwriting.

46.     Plaintiff reported directly to Watson following the promotion.

47.     In March 2019, Plaintiff received her year-end bonus for 2018 – the first bonus she received since she began reporting to Watson.

---

[1] The Managing Director's actual name has been replaced with a pseudonym in an effort to preserve his privacy.  The actual names of Comparator A, Comparator B, SVP 1, and SVP 2 (*see infra* ¶¶ 57, 87) have also been replaced with pseudonyms for the same reason.

48.     Despite having had another exceptional year, Plaintiff's year-end bonus was a fraction of what she was owed under the Formula.

49.     Plaintiff complained to Watson that BB&T had not issued her a new pay plan, yet failed to calculate her bonus pursuant to the Formula.

50.     As Plaintiff explained to Watson, by failing to calculate her bonus pursuant to the Formula – the operative pay plan in effect – BB&T had failed to pay her in accordance with the agreed terms of her employment.

51.     In doing so, Plaintiff lodged the first of several protected complaints regarding Defendants' failure to pay her the wages she was owed under the NYLL.

52.     Plaintiff and Watson's relationship deteriorated precipitously from there.

53.     For example, roughly two months after Plaintiff's first protected complaint, Watson issued her a written warning regarding her purported failure to report to the office, citing several days she supposedly missed without notifying the Bank.

54.     However, Plaintiff was out sick on several of these days and had obtained Watson's approval to take paid time off.

55.     On the remaining days, Plaintiff did not fail to report to work, but rather worked from home based on an arrangement she had in place for several years.

56.     Following his issuance of the written warning, Watson notified Plaintiff that he would no longer permit her to work from home.

57.     Still frustrated with BB&T's underpayment of her bonus, Plaintiff began discussing the same with two male traders with whom she worked in the New York City office: Comparator A and Comparator B.

58.     In these conversations, Plaintiff learned that, beginning with their 2018 year-end bonuses, Comparators A and B consistently received bonuses paid at much higher rates than Plaintiff did relative to each of their respective profits and commissions earned under the Formula.

59.     By way of example only, in 2019 – the first full year during which she reported to Watson – Plaintiff generated approximately $1,186,757.00 in profits and approximately $9,309,217.00 in commissions.

60.     Applying the Formula, Plaintiff should have received approximately $1,254,457.44 in total bonuses for 2019.

61.     Instead, she received only $305,000.00, or 24.31% of what she had earned.

62.     Conversely, in 2019, Comparator A generated approximately $595,890.00 in profits and approximately $1,880,751.00 in commissions.

63.     Applying the Formula, Comparator A should have received approximately $262,868.12 in total bonuses for 2019.

64.     Ultimately, Comparator A received 2019 bonuses totaling $155,000, or 58.96% of what he earned under the Formula.

65.     In other words, BB&T paid Comparator A's bonus at more than double the rate it paid Plaintiff's relative to Comparator A's and Plaintiff's respective levels of production.

66.     As with her 2019 bonuses, Plaintiff's 2018 year-end bonus and, upon information and belief, her 2020 mid-year bonus, were also paid at rates far lower than those applied to calculate Comparator A's bonus.

67.     As for Comparator B, his 2018 year-end bonus, 2019 bonuses, and 2020 mid-year bonus were paid at a rate even higher than that applied to Comparator A.

68.     This pay disparity is not justified by a seniority system, merit system, or any factor other than sex.

69.     Similarly, it is not based on quantity or quality of production.

70.     On the contrary, Defendants' pay practices were inversely related to Plaintiff's and her male comparators' respective levels of production.

71.     Plaintiff, Comparator A, and Comparator B performed jobs requiring equal qualifications, experience, and responsibility.

72.     Further, Plaintiff, Comparator A, and Comparator B had the same job duties, with one exception:  Plaintiff traded more volatile securities, thus making her production relative to Comparators A and B all the more impressive.

73.     Indeed, whereas Plaintiff trades structured notes and CDs, Comparator A trades conventional CDs and Comparator B trades municipal bonds.

74.     In sum, Plaintiff performed equal or substantially similar (if not more difficult) work as compared to Comparators A and B, yet her bonuses are paid at a fraction of her male colleagues' rates.

75.     This is plainly inequitable.

76.     On November 19, 2019, Plaintiff spoke with Watson over the phone regarding BB&T's continued failure to pay her bonus in accordance with the Formula.

77.     Watson surprisingly acknowledged that Plaintiff should have been paid more, citing both the BB&T's and Plaintiff's historic production in 2019.

78.     Despite Watson's acknowledgement, Defendants did not take any steps to correct the pay disparity.

79.     Plaintiff complained to Watson again in February 2020.

80.     This time, rather than acknowledging her success and entitlement to be compensated accordingly, he questioned whether she even deserved the bonus she had been paid, challenging her, "Do you really think you deserve to be paid that?"

81.     Of course, all that Plaintiff asked was that BB&T honor the Formula, as BB&T still had not issued a new pay plan, or at least pay her at the same rate as Comparators A and B.

82.     Throughout 2019 and early 2020, Plaintiff continued to complain to Watson and others regarding non-payment of her earned bonuses.

83.     Nevertheless, BB&T continued to depress her bonus compensation and pay Comparators A and B at far more favorable rates.

**D.     Defendants' Retaliation against Plaintiff and Continued Unequal Pay Practices**

84.     In or around October 2019, Defendants demoted Plaintiff.

85.     Following a merger between BB&T Corporation (at that time the parent of BB&T Capital Markets, Inc. and Defendant BB&T Securities, LLC) and SunTrust Banks, Inc. to form Truist, Defendants stripped Plaintiff of the managerial duties she had maintained since 2015.

86.     Instead, Defendants relegated Plaintiff to tasks more appropriate for the Product Specialist role she held more than a decade ago.

87.     Further, Defendants promoted two of their male VPs to SVP ("SVP 1" and "SVP 2," respectively) and asked that Plaintiff report to them going forward, despite the fact that she had been in the role of SVP since 2018.

88.     Specifically, Plaintiff now reports directly to SVP 1, and indirectly to SVP 2.

89.     Whereas Plaintiff previously reported directly to Watson, there are now two male SVPs in the reporting line between her and Defendants' Head of Private Wealth Management

Advisory Solutions – again, despite the fact that Plaintiff has held the title of SVP herself since 2018.

90.     Plaintiff was also forced to cede her role as a Product Manager to SVP 1, despite his lack of experience handling the role or the responsibilities associated therewith.

91.     Notably, of all of the employees reporting to SVP 2, Plaintiff is the only one who held the role of Product Manager prior to the merger but does not report directly to SVP 2.

92.     Instead, as noted above, she reports directly to SVP 1, and to SVP 2 only indirectly.

93.     Further, Defendants' demotion has diminished Plaintiff's compensation, as she now supports SVP 1 to trade on the same product and portfolio she previously managed alone.

94.     As such, Plaintiff and SVP 1 now share in the same bonus pool, whereas Plaintiff's bonus was previously to be calculated (pursuant to the Formula) based on a portfolio she managed independently.

95.     Notably, in November 2019, Plaintiff was asked to train SVP 1 on her product and portfolio, ostensibly so that he could serve as her "back-up."

96.     Defendants' decision to promote SVPs 1 and 2 from Plaintiff's inferiors to her supervisors, thereby demoting Plaintiff, has signaled a growing desire to push her out of the Bank.

97.     In fact, when Plaintiff complained about her demotion, SVP 2 said he was merely enacting the plan developed by Watson, who previously made his retaliatory animus toward Plaintiff unmistakable.

98.     Additionally, as of January 1, 2020, Defendants no longer considered Plaintiff to be in a "Sensitive Key Position" for compliance purposes – a designation she had held since her promotion to SVP in 2018.

99.     This further underscored the reality that, while Plaintiff's job title remained the same, her duties, responsibilities, and status within the Bank had precipitously declined because of her protected complaints to Watson.

100.     Simply put, Defendants are clearly intent on pushing Plaintiff out of the Bank based on her protected activity, short hundreds of thousands of dollars she would have received but for Defendants' unequal pay practices.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: UNEQUAL PAY BASED ON SEX

101.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

102.     During the full statutory period, Plaintiff was protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.*, and all applicable regulations thereunder.

103.     During the full statutory period, Plaintiff performed equal work, under similar working conditions, on jobs requiring equal skill, effort, and responsibility as compared to her male comparators.

104.     Despite this, Defendants paid Plaintiff's bonus at a rate lower than that of her male comparators in violation of the FLSA, including, without limitation, 29 U.S.C. § 206(d).

105.     This pay differential was not the result of a seniority system, a merit system, any system which measures earnings by quantity or quality of production, or any factor other than sex.

106.     Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the FLSA.

107.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the FLSA, Plaintiff is entitled to recover damages to the greatest extent permitted by law.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: UNEQUAL PAY BASED ON SEX**

108.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

109.    During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

110.    During the full statutory period, Plaintiff performed equal or substantially similar work, under similar working conditions, on jobs requiring equal skill, effort, and responsibility as compared to her male comparator.

111.    Despite this, Defendants paid Plaintiff's bonus at a rate lower than that of her male comparators in violation of the NYLL, including, without limitation, N.Y. Lab. Law § 194.

112.    This pay differential was not the result of a seniority system, a merit system, any system which measures earnings by quantity or quality of production, or any factor other than sex.

113.    Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL.

114.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYLL, Plaintiff is entitled to recover damages to the greatest extent permitted by law.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL 191: FAILURE TO PAY ALL WAGES OWED**

115.    Throughout the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

116.    The NYLL requires covered employers, including Defendants, to compensate employees in accordance with their agreed terms of employment.

117.    Plaintiff was not and is not exempt from this requirement and is entitled to be paid by Defendants in accordance with the agreed terms of her employment, including, *inter alia*, the agreed terms memorialized in the Formula.

118.    By the actions described above, Defendants have failed to pay Plaintiff all of her wages owed in violation of the NYLL.

119.    Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL.

120.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYLL, Plaintiff is entitled to recover damages to the greatest extent permitted by law.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: RETALIATION**

121.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

122.    During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

123.    The NYLL prohibits covered employers, including Defendants, from retaliating against employees because they engage in protected activity concerning alleged violations of the NYLL.

124.    Protected activity under the NYLL specifically includes complaining to one's employer "that the employer has violated any provision" of the NYLL.

125.    As set forth above, Plaintiff engaged in protected activity under the NYLL by, *inter alia*, complaining to Defendants regarding nonpayment of her earned bonuses in violation of the NYLL.

126.    Defendants retaliated against Plaintiff for her protected activity in violation of the NYLL by, *inter alia*, denying her bonus compensation and demoting her.

127.    Defendants' unlawful and retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL.

128.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYLL, Plaintiff is entitled to recover damages to the greatest extent permitted by law.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYSHRL: SEX DISCRIMINATION**

129.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

130.    During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

131.    By the actions described above, among others, Defendants have discriminated against Plaintiff on the basis of her sex in violation of the NYSHRL by denying her the same terms and conditions of employment available to male employees, including, *inter alia*, failing to pay her bonuses at rates equal to those applied to her male comparators.

132.     Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

133.     As a result of Defendants' unlawful conduct in violation of the NYSHRL, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

## SIXTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL: GENDER DISCRIMINATION

134.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

135.     During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

136.     By the actions described above, among others, Defendants have discriminated against Plaintiff on the basis of her gender in violation of the NYCHRL by denying her the same terms and conditions of employment available to male employees, including, *inter alia*, failing to pay her bonuses at rates equal to those applied to her male comparators.

137.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of compensatory damages.

138.     Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL.

139.     As a result of Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A.       Declare that the practices complained of herein are unlawful under applicable federal, State, and City law;

B.       Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.       Grant Plaintiff an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate her for her economic damages;

D.       Grant Plaintiff an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate her for all non-monetary and/or compensatory damages she has suffered, including, without limitation, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

E.       Grant Plaintiff an award of damages in an amount to be determined at trial, plus prejudgment interest, for any and all other monetary and/or non-monetary losses she has suffered;

F.       Grant Plaintiff an award of punitive damages in an amount to be determined at trial;

G.       Grant Plaintiff an award of liquidated damages in an amount to be determined at trial;

H.       Grant Plaintiff an award of reasonable attorneys' fees to the greatest extent permitted by law;

I.       Grant Plaintiff an award of reasonable costs that she has incurred in this action, including, without limitation, expert witness fees;

J.       Grant Plaintiff all other available damages to the greatest extent permitted by law; and

K.      Grant such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

Dated: November 24, 2020          **FARUQI & FARUQI, LLP**
       New York, New York

                                  By: */s/ Alex J. Hartzband*
                                      Innessa M. Huot
                                      Alex J. Hartzband
                                      Camilo M. Burr

                                  685 Third Avenue, 26th Floor
                                  New York, New York 10017
                                  Telephone: 212-983-9330
                                  Facsimile: 212-983-9331
                                  ihuot@faruqilaw.com
                                  ahartzband@faruqilaw.com
                                  cburr@faruqilaw.com

                                  *Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STACI GOINS,<br><br>                    Plaintiff,<br><br>          v.<br><br>BB&T SECURITIES, LLC, TRUIST FINANCIAL CORPORATION, and ERIC WATSON, in his individual and professional capacities,<br><br>                    Defendants. | Civil Action No.:<br><br>**CONSENT TO SUE** |

I, Staci Goins, was employed by Defendants in the last three years and am the named Plaintiff in the above-captioned action, *Goins v. BB&T Securities, LLC, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Staci Goins

_____

Signature:

DocuSigned by:

*Staci Goins*

33DE9A37B59842D...

Date: 11/24/2020 | 11:28 AM EST